**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **TIBERIUS MAYS, # N-92625,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18-cv-181-MJR** |
| | ) | |
| **VENERIO BENERRO SANTOS,** | ) | |
| **VIPEN SHAH,** | ) | |
| **ROBERT MUELLER,** | ) | |
| **STEPHANIE WAGGONER,** | ) | |
| **LISA KREB/KREBS,**[1] | ) | |
| **KEVIN KINK,** | ) | |
| **AARON SINGLER,** | ) | |
| **R. WEGMAN,** | ) | |
| **LISA PRATHER,** | ) | |
| **MICKEY WALTON,** | ) | |
| **APRIL WAMPLER,** | ) | |
| **RYAN ERICKSON,** | ) | |
| **DAVID RAINS,** | ) | |
| **MICHELLE NEESE,** | ) | |
| **JOHN DOE (Head of Wexford Health),** | ) | |
| **ROGERICK MATTICKS,** | ) | |
| **MELISSA PHOENIX,** | ) | |
| **PHILIP MARTIN,** | ) | |
| **DR. RITZ,** | ) | |
| **ANN LEHR,** | ) | |
| **PAUL RUPERT,** | ) | |
| **LESLIE McCARTY,** | ) | |
| **and TERRI ANDERSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Robinson Correctional Center ("Robinson"), has

---

[1] Plaintiff spells this Defendant's surname as "Kreb" in his list of parties. (Doc. 1, p. 2). However, he consistently refers to her as "Krebs" in the body of the Complaint, and this is the spelling of her name in prison documents included as exhibits to the Complaint. This Defendant shall therefore be referred to as "Krebs" in this Order.

brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Most of Plaintiff's claims arose while he was incarcerated at Centralia Correctional Center ("Centralia"); these include deliberate indifference to Plaintiff's serious medical conditions, retaliation, and receiving false disciplinary reports. Plaintiff also raises medical deliberate indifference and retaliation claims based on events after his 2017 transfer to Robinson. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Additionally, the Court must consider whether all of Plaintiff's claims may appropriately proceed together in the same action.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true,

*see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A. Further, the Court shall exercise its discretion to sever unrelated claims into two separate cases.

### The Complaint

By way of background, Plaintiff explains that in April 2014, while he was at Lawrence Correctional Center ("Lawrence"), he underwent nasal surgery at an outside hospital, and returned to that facility for 2 follow-up visits for "nasal cleaning." (Doc. 1, p. 6). However, in February 2015, an official at Wexford Health Sources denied authorization for Plaintiff to return for a 6-month follow-up. *Id*. Plaintiff alleges that he continues to suffer from chronic nasal polyps which impair his ability to breathe, interfere with his sense of smell, cause pain and dizziness when he blows his nose, and cause nosebleeds. He also gets a sore throat and sometimes chokes from breathing through his mouth. (Doc. 1, p. 9). In addition, Plaintiff suffers from asthma and severe lower back pain.

**A. Medical Issues at Centralia**

Plaintiff was incarcerated at Centralia from August 19, 2015, until February 8, 2017. (Doc. 1, pp. 6, 16). He details numerous visits to doctors and other health care professionals

during this time. On August 23, 2015, soon after Plaintiff's arrival at Centralia, he requested Dr. Santos to issue him a low-bunk permit and waist-chain cuff permit to alleviate his back condition, and distilled water and a sinus nasal kit for his nasal issues. (Doc. 1, p. 6). Santos did not examine Plaintiff's nose, did not order the sinus kit or distilled water, and changed most of Plaintiff's medications to one-month prescriptions. At Lawrence, those prescriptions had been authorized for multiple months. Plaintiff had to seek medical attention 6 days later (on August 29, 2015) for his enlarged nasal polyps. He returned again on August 31, 2015, for a saline rinse and to renew the waist-chain permit, which were issued by Dr. Garcia (who is not named as a Defendant). For each visit, Plaintiff was charged a $5.00 co-payment. (Doc. 1, pp. 6-7).

On September 21, 2015, Plaintiff visited sick call to renew his medications, after Dr. Santos' short-term prescription had expired. Plaintiff filed grievances over the $5.00 charge for this and other visits, objecting on the basis that he should not be charged a co-payment when he needed care for a chronic medical condition. Plaintiff also requested to be placed on the "general medicine clinic" for his conditions, which would exempt him from the co-payment. Warden Mueller denied this request and the co-payment grievance. Health Care Administrator Krebs also responded, referencing Dr. Santos' discretion to make treatment decisions. (Doc. 1, p. 7).

Plaintiff sought treatment for his nasal condition through sick call and saw Dr. Santos several more times in late 2015. He filed complaints against Santos and Krebs over the refusal to classify his condition as "chronic" and the shortened duration of his prescriptions, which caused Plaintiff to incur more co-pay obligations.[2] (Doc. 1 pp. 7-8). He also requested to be sent to an

---

[2] Plaintiff indicates that medical officials at his former prison (Lawrence) had treated his nasal condition and back pain as "chronic" conditions, and states that he was only assessed a co-payment for treatment of these conditions 1 or 2 times over a 2-year period. (Doc. 1, p. 6).

outside specialist for his nasal polyps and low back pain.[3]  On some occasions, Plaintiff refused to sign the co-pay voucher and did not receive care.  Mueller denied his grievances.  While Santos told Plaintiff that his nasal polyps were "chronic," he still refused to place Plaintiff on the general medicine clinic in order to stop the $5.00 co-payment charges.  Krebs informed Plaintiff that his nasal polyps were not "chronic" under IDOC guidelines.  (Doc. 1, pp. 8-9).

In February 2016, Plaintiff consulted Santos for his lower back pain.  Plaintiff was on pain medication and had a low bunk permit, but Santos refused to order physical therapy or a different mattress.  (Doc. 1, p. 15).  Plaintiff had reported in October 2015 that he was experiencing numbness in his feet and legs while walking, and had "clicking" in his lower back when he sits, along with back pain.  (Doc. 1, p. 7).

In March 2016, Santos refused to refer Plaintiff for an outside consultation for the nasal polyps, even though Dr. Garcia recommended such a referral and Plaintiff was having trouble breathing due to the polyps and chronic congestion.  (Doc. 1, pp. 9, 15).  In January and March 2016, Plaintiff filed grievances against Santos, and in March 2016, he complained to the Illinois Department of Financial and Professional Regulations about Santos and Krebs.  (Doc. 1, p. 10; Doc. 1-1, pp. 9-11).  In May 2016, Santos again refused to refer Plaintiff to an outside specialist.

From March through May 2016, Plaintiff had several visits seeking treatment for the pain, blockage, and difficulty breathing caused by the polyps.  (Doc. 1, p. 15).  On May 23, 2016, Santos refused to order prednisone and accused Plaintiff of "shopping," despite Plaintiff's report that he could not smell, and had severe dizziness and bleeding when he blew his nose.  *Id*. Plaintiff filed a grievance against Santos, which was denied by Prather (IDOC Regional Coordinator) and Phoenix (of the Administrative Review Board).  (Doc. 1, p. 16).

---

[3] Plaintiff asserts that his medical records from his 2012-13 and 2014 outside medical treatment reflect that he has "chronic sinusitis and nasal polyp[s]."  (Doc. 1, p. 15).  Nonetheless, Santos and Dr. Shah (at Robinson) have denied Plaintiff's requests to be evaluated by an outside specialist.  *Id.*

Plaintiff claims that Santos "deliberately" refused and delayed necessary medical attention from an outside specialist for his nasal polyps and chronic back pain. (Doc. 1, p. 10).

On December 5, 2016, Plaintiff requested a colonoscopy and an outside referral for a prostate test for cancer, both of which were denied, apparently by Santos. Krebs informed Plaintiff that Santos must approve all treatment, medications, and tests. (Doc. 1, p. 13; Doc. 1-2, p. 18). Plaintiff filed another grievance on December 21, 2016, requesting that his medications for the nasal polyps and back pain be issued for a 6-month period; the grievance was denied. *Id.*

**B. Complaints against Singler - Centralia**

Plaintiff alleges that in July 2016,[4] Singler (a temporary law librarian) issued Plaintiff a disciplinary ticket for unauthorized movement, after Plaintiff complained about Singler forcing him to pay for copies of case law before Plaintiff could read the material. (Doc. 1, p. 10). Plaintiff asserts that Singler's ticket was false and issued in retaliation for Plaintiff's complaint, and violated his right to due process. Rupert (who conducted the disciplinary hearing) ignored Plaintiff's written statement explaining his "not guilty" response to the charge, and incorrectly stated that Plaintiff had pled guilty. (Doc. 1, pp. 11, 19, 22; Doc. 1-1, pp. 12-16; Doc. 1-2, pp. 8-11). Plaintiff's grievance over the disciplinary action led Mueller to remand the matter.

Plaintiff later filed another grievance against Singler for refusing him library time when he had a court deadline. On August 17, 2016, Singler issued Plaintiff an allegedly false disciplinary ticket for insolence, which Plaintiff claims was an act of retaliation for his complaints. (Doc. 1, p. 11; Doc. 1-1, pp. 17, 20-21; Doc. 1-2, pp. 12-13). Plaintiff challenged that ticket, and also complained that he should not have to buy typewriter ribbons for the law library typewriters. (Doc. 1, p. 11). Singler's alleged retaliation continued and included

---

[4] On page 10 of the Complaint, Plaintiff states that this incident took place in July 2017, but it is apparent from the context that the correct date was July 2016. (Doc. 1, p. 10-11).

changing Plaintiff's law library times and losing his court papers. (Doc. 1, pp. 11-12).

## C. PREA Complaint against Bailey - Centralia

Plaintiff alleges that C/O Bailey #7429 issued Plaintiff a disciplinary ticket on September 30, 2016, which was quickly expunged. (Doc. 1, p. 12). Plaintiff does not list C/O Bailey among the Defendants. (Doc. 1, pp. 2-4). On October 5, 2016, just days after the disciplinary ticket incident, Bailey "committed a PREA[5] violation" by opening Plaintiff's cell door to allow others to view Plaintiff while he was naked, and by staring at Plaintiff's penis. (Doc. 1, p. 12). Plaintiff pursued a PREA complaint, and on October 6, 2016, he was moved by Major Philips (who is not a Defendant) to the "receiving unit." (Doc. 1, pp. 12-13). While there, Plaintiff's access to out-of-cell activities including yard was more restricted. (Doc. 1, p. 13). Plaintiff alleges that Kink (Warden for Operations) "allow[ed] the retaliatory cell move" to the receiving unit because Plaintiff filed the PREA complaint. (Doc. 1, p. 21). The investigation found that Plaintiff's PREA claim was unsubstantiated; Warden Mueller notified Plaintiff of this outcome in a memo dated October 13, 2016. (Doc. 1, p. 12; Doc. 1-2, p. 14). Kink and Mueller kept Plaintiff in the receiving unit until December 9, 2016, despite Plaintiff's "numerous talks" with them about his placement. (Doc. 1, p. 13).

## D. PREA Complaint against Dr. Santos – Centralia

After Santos denied Plaintiff's December 5, 2016, request for an outside referral for a prostate cancer test, and following Plaintiff's December 21, 2016, grievance, Plaintiff visited Dr. Santos on December 27, 2016, for a physical. Santos told Plaintiff he was too sick for a physical, but asked if Plaintiff wanted a rectal exam for prostate cancer. (Doc. 1, p. 14). Santos then put his fist in the air, saying, "I do it like this." *Id.* Plaintiff responded, "No, a finger." *Id.*

---

[5] Prison Rape Elimination Act. The Complaint does not indicate that Plaintiff wishes to pursue a PREA claim in this action; instead, he sets forth these facts to support a retaliation claim against Kink and Mueller.

Santos said again, "No, I do it like this," while shaking his fist in the air, demonstrating that he would put his fist into Plaintiff's rectum. (Doc. 1, p. 14). Plaintiff claims this is an "offensive and obscene gesture" called "fisting," which is a homosexual practice. *Id.* Plaintiff immediately filed a PREA complaint with Krebs, detailing Santos' behavior, but Krebs did not report this letter to any other prison authorities.

On December 30, 2016, Plaintiff went to see Santos again. Santos was very agitated and refused to give Plaintiff a physical. (Doc. 1, p. 14).

On January 2, 2017, Plaintiff called the PREA number to report Santos' behavior. He met with internal affairs officers on January 3, 2017, and gave them a letter about the incident, which included a complaint against Krebs for failure to report the PREA violation.

On February 8, 2017, Plaintiff was transferred to Robinson, before he received any response to the PREA complaint. Plaintiff did not request the transfer, and believes Santos, Mueller, Waggoner, Kink, and Krebs were all involved in instigating the move in retaliation for his PREA complaint against Santos and for his many grievances over medical and other issues. (Doc. 1, pp. 14, 20-21). Plaintiff's new housing situation at Robinson offered him much less privacy than he had at Centralia, the conditions were not clean, and the dry air irritated his throat. (Doc. 1, p. 14).

**E. Medical Issues at Robinson**

On February 14, 2017, Plaintiff saw Health Care Administrator Martin about his need for prednisone for the nasal polyps, but Martin was arrogant and would not allow Plaintiff to speak. (Doc. 1, p. 16).

Plaintiff consulted Dr. Shah in February and March 2017 and requested "collegial review" for an outside specialist evaluation for his nasal polyps. Shah and Dr. Ritz denied the

referral. (Doc. 1, p. 16). Shah did order prednisone and a nasal rinse kit for 3 months, but he later reduced Plaintiff's dosage of prednisone. (Doc. 1, pp. 16-17). Plaintiff filed grievances over Shah's treatment, claiming his nasal polyps were getting progressively worse. Martin, Erickson (Clinical Service Supervisor), Walton (Counselor), Wampler (Casework Supervisor), and Warden Rains denied his grievances and failed to intervene to correct Shah's improper treatment. (Doc. 1, pp. 17, 19, 22). Administrative Review Board members Lehr, Phoenix, McCarty, and Anderson denied plaintiff's numerous grievances over medical treatment and retaliation. (Doc. 1, pp. 19, 22).

In June 2017, Shah requested collegial review for an outside consultation, but Ritz (for Wexford Health Sources) denied the request. On August 11, 2017, Plaintiff wrote a letter to Rains and Neese (Warden for Programs, over the Health Care Unit) detailing his inadequate medical care; this letter was also mailed to Dr. Steve Meeks, the IDOC Chief Medical Director (Meeks is not a Defendant). (Doc. 1, p. 17). Meeks overruled Ritz's denial of the outside consultation, and Plaintiff had a CAT scan with an ear, nose, and throat specialist on August 29, 2017. (Doc. 1, pp. 17-18).

Plaintiff had endoscopic nasal surgery for the polyps on January 5, 2018, at Carle Hospital. (Doc. 1, p. 17). On January 9, 2018, Shah terminated Plaintiff's Tylenol-3 and reduced his nasal rinses. Plaintiff claims these actions were premature and in retaliation for Plaintiff's grievances against Shah. (Doc. 1, pp. 18, 20).

Plaintiff asserts that Wexford Health Sources (which is not included among the Defendants) maintains policies and customs that incentivize its employees to provide inadequate treatment in order to cut costs. (Doc. 1, pp. 18-19, 23).

Plaintiff seeks monetary damages for the violations of his rights. (Doc. 1, p. 23).

## <u>Merits Review Pursuant to 28 U.S.C. § 1915A</u>

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following 10 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Eighth Amendment deliberate indifference claim against Santos and Krebs, for denying and delaying treatment and specialist referrals for Plaintiff's nasal condition and back pain between August 2015 and February 2017 at Centralia;

**Count 2:** Eighth Amendment deliberate indifference claim against Santos, Krebs, and Mueller for refusing to classify Plaintiff's conditions as "chronic" so that he would not be charged a $5.00 co-payment for each health care visit;

**Count 3:** Eighth Amendment deliberate indifference claim against Mueller, Waggoner, Prather, and Phoenix, for failing to intervene to ensure that Plaintiff would be given adequate medical treatment at Centralia;

**Count 4:** Due Process claim against Singler for issuing false disciplinary tickets against Plaintiff, and against Rupert for finding Plaintiff guilty on the July 2016 ticket at Centralia;

**Count 5:** First Amendment retaliation claim against Singler, for issuing false disciplinary tickets against Plaintiff, and interfering with Plaintiff's law library access, after Plaintiff complained and filed grievances against Singler;

**Count 6:** First Amendment retaliation claim against Kink, for moving Plaintiff to the "receiving unit" at Centralia in October 2016, and against Mueller for keeping Plaintiff there, after Plaintiff filed a PREA complaint against C/O Bailey;

**Count 7:** First Amendment retaliation claim against Santos, Mueller, Wegman, Waggoner, Krebs, and Kink, for transferring Plaintiff to Robinson in December 2016 after he filed a PREA complaint and numerous medical-care complaints against Santos;

**Count 8:** Eighth Amendment deliberate indifference claim against Shah, Ritz, and Martin for denying and delaying treatment for Plaintiff's nasal condition at

Robinson during 2017;

**Count 9:** Eighth Amendment deliberate indifference claim against Martin, Erickson, Walton, Wampler, Rains, Neese, Lehr, Phoenix, McCarty, and Anderson for failing to intervene to ensure that Plaintiff would be given adequate medical treatment at Robinson;

**Count 10:** First Amendment retaliation claim against Shah, for prematurely terminating Plaintiff's post-surgery medication and nasal rinses in January 2018 because Plaintiff filed grievances against Shah.

### Severance of Claims & Defendants

In addition to conducting the merits review under § 1915A, the Court must consider whether the claims against the various parties may properly proceed together in the same action, in consideration of Federal Rule of Civil Procedure 20. Under Rule 20(a)(2),[6] a "plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (West 2017); FED. R. CIV. P. 20(a)(2). The Seventh Circuit instructs that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b), (g)). Severance of unrelated claims is encouraged, and the Seventh Circuit has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens*

---

[6] Rule 20, which governs joinder of parties in a single action, must be satisfied before the Court turns to the question of whether claims are properly joined under Rule 18. *Intercon Research Assoc's, Ltd. v. Dresser Industries, Inc.*, 696 F.2d 53, 57 (7th Cir. 1982); Wright, Miller, & Kane, 7 Federal Practice & Procedure Civil 3d § 1655 (West 2017). Rule 18 allows a plaintiff to join in one action as many claims as it has against an opposing party.

*v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017).  *See also Wheeler v. Talbot*, 695 F. App'x 151, 152 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them).  Consistent with *George*, *Owens*, and *Wheeler*, improperly joined parties and/or claims shall be severed into new cases, given new case numbers, and assessed separate filing fees.

Plaintiff's deliberate indifference claims against Centralia Defendants Santos, Krebs, Mueller, Waggoner, Prather, and Phoenix in Counts 1-3 are based on the same series of transactions at Centralia and are properly joined under Rule 20.  The retaliation claim in Count 6 includes Mueller as well as Kink.  The retaliation claim in Count 7 involves 4 of the Defendants named in Counts 1-3 (Santos, Mueller, Krebs, and Waggoner), as well as Wegman and Kink. Because the claims in Counts 1-3, 6, and 7 have several Defendants in common, these claims shall be considered together for the purposes of initial review under § 1915A.  As shall be discussed below, the claims that survive the § 1915A merits review of Counts 1-3, 6, and 7 shall remain together in this action.

On the other hand, Counts 4 and 5 against Singler and Rupert clearly arose from distinct transactions or occurrences from those that gave rise to Counts 1-3 and Counts 6-7.  Thus, Counts 4 and 5 may not be brought in the same action as Counts 1-3 and 6-7, even though all these claims arose at Centralia.  The claims in Counts 8, 9, and 10 all occurred at Robinson, and do not involve the same incidents or Defendants[7] as Counts 1-7.  Consistent with the *George* decision and Federal Rules of Civil Procedure 20 and 21, the Court shall sever Counts 4-5 into a new case, and shall sever Counts 8-10 into another new case.  Plaintiff shall be assessed a new filing fee for each of the 2 severed cases (Counts 4-5, and Counts 8-10).

---

[7] Phoenix is the only Defendant associated with claims from both Centralia (Count 3) and Robinson (Count 9).  However, the claim against Phoenix in Count 3 shall be dismissed; therefore, her inclusion does not serve to link the Robinson claims in Count 9 with the Centralia claims in Count 3.

After the new cases for Counts 4-5 and Counts 8-10 are opened and assigned to a judge, the Court shall conduct the required merits review pursuant to 28 U.S.C. § 1915A on those severed claims. The merits of Counts 1-3 and Counts 6-7 shall be addressed below.

**Count 1 – Deliberate Indifference to Serious Medical Conditions – Santos & Krebs**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff had suffered from recurring nasal polyps, sinus congestion, pain, and occasional bleeding from his nose for a period of several years. At times, this condition appears

to have aggravated Plaintiff's asthma.  The polyps required surgical intervention on 2 occasions.  This condition satisfies the objective component of an Eighth Amendment claim.  Plaintiff's recurring lower back pain may also qualify as an objectively serious condition.  The remaining question is whether the Defendants acted or failed to act with deliberate indifference to a known risk of serious harm from either of these conditions.

At Centralia, Dr. Santos provided Plaintiff with what appears to have been a consistent supply of medications for his nasal condition, although Plaintiff was dissatisfied that Santos required him to return on a monthly basis to renew those prescriptions.  This change of schedule does not, in and of itself, suggest deliberate indifference to Plaintiff's condition, as it caused mere inconvenience and did not deprive Plaintiff of treatment.  Santos did not issue Plaintiff a sinus kit or distilled water when he first arrived, but Plaintiff later obtained a nasal kit from the other doctor.  It is not clear how long Plaintiff might have been without those items.

Beginning in October 2015, Plaintiff requested to be sent to an outside specialist for evaluation and treatment of the nasal polyps, which were causing serious symptoms.  However, Santos refused to refer Plaintiff to an outside provider.  Plaintiff points out that Dr. Garcia in March 2016 recommended that Plaintiff should be considered for a specialist consultation because the prison did not have the necessary equipment to examine his nose.  (Doc. 1, p. 9).  Nonetheless, Santos denied the request, and did so again in May 2016.  (Doc. 1, p. 10).  This difference of opinion between Dr. Garcia and Dr. Santos regarding whether an outside consultation was warranted does not mean that Santos violated Plaintiff's rights.  A disagreement between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference.  *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements

about medical personnel's judgments or techniques).

The Complaint relates that during the time frame when Plaintiff requested a specialist referral, he sought care on a number of occasions for complaints of pain, difficulty breathing, and bleeding due to the nasal polyps. This suggests that Plaintiff's symptoms may have been growing worse during the time that he was under Santos' care. If that was the case, and if Santos' refusal to recommend a specialist referral amounted to a knowing disregard of a serious risk to Plaintiff's health, Plaintiff may be able to sustain his claim of deliberate indifference. *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (lengthy course of ineffective treatment, and refusal to order testing or specialist referral over a two-year period during which plaintiff suffered from ulcer suggested deliberate indifference). This question cannot be resolved at the pleading stage. Therefore, Plaintiff may proceed with his claim against Santos for deliberate indifference to his need for treatment and specialist care for the nasal polyp condition.

Plaintiff also raises a deliberate indifference claim against Santos for allegedly failing to treat his recurring back pain, and refusing to refer him to a specialist for that condition. The Complaint shows that Santos continued to prescribe pain medication for Plaintiff, and that Plaintiff was given low-bunk and waist-chain handcuff permits in order to address his back condition. However, Santos denied Plaintiff's requests to have physical therapy, a different mattress, or an outside specialist referral for his back pain. (Doc. 1, p. 15). Based on the factual allegations in the Complaint, these denials do not suggest that Santos was deliberately indifferent to Plaintiff's back condition. A prisoner is not entitled to "demand specific care" or "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). The Constitution requires a doctor to take "reasonable measures to meet a substantial risk of serious harm," *id.*, and it appears that the pain medication and medical permits met that constitutional obligation. This

portion of Plaintiff's deliberate indifference claim against Santos is therefore dismissed without prejudice.

Health Care Administrator Krebs received and reviewed complaints from Plaintiff regarding Santos' refusal to send him to an outside specialist. She notified Plaintiff that Santos, as the Medical Director, was the only person who could make such a referral, and encouraged him to discuss the matter with Santos or the other physician. Based on this information, it does not appear that Krebs had the authority to override Santos' judgment on the question of whether a specialist referral was necessary, or to make such a referral herself. Under these circumstances, the deliberate indifference claim against Krebs in Count 1 shall be dismissed without prejudice.

**Count 1** shall proceed against Santos only, on the matter of whether Santos was deliberately indifferent to Plaintiff's nasal condition.

### Dismissal of Count 2 – Chronic Condition – Santos, Krebs, & Mueller

Plaintiff complains at length about these Centralia officials' refusal to designate his nasal condition or back problems as "chronic conditions." Before Plaintiff was transferred to Centralia, Lawrence officials had apparently considered those conditions to be "chronic," and as a result, Plaintiff was only rarely charged the $5.00 co-payment when he sought medical attention. In contrast, Plaintiff was assessed a $5.00 co-payment at Centralia each time he sought treatment.

This difference of opinion between Centralia and Lawrence medical officials regarding what qualifies as a "chronic" condition does not amount to deliberate indifference on the part of Santos, Krebs, or Mueller. As noted in the discussion of Count 1, differing opinions between medical professionals concerning the treatment of an inmate do not support a claim for deliberate indifference. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Garvin v.*

*Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques).

On this matter, the disagreement is not over treatment of Plaintiff's illnesses, but instead concerns the application of prison rules and/or regulations to the classification of Plaintiff's condition. This is not a problem of constitutional dimension. An inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services. Whether or not a statutory exemption (such as the "chronic-condition" waiver of a fee) should apply to the co-payment rule is a question of state law, which is not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"). Plaintiff's Eighth Amendment claim based on this matter shall be dismissed with prejudice. However, Plaintiff is free to pursue his claim for an exemption from the co-payment in state court, if such an action would be timely under state rules.

Additionally, if Plaintiff was refused treatment on the occasions when he refused to sign an authorization to be charged the co-payment, this did not violate his constitutional rights. "The Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Poole*, 703 F.3d at 1026. An inmate who "opt[s] to refuse treatment rather than part with his money" cannot prevail on an Eighth Amendment claim because "[e]ven though he was in pain until he received treatment, the delay in receiving care was of his own making." *Id.* at 1027.

Accordingly, the civil rights claim in **Count 2** against Santos, Krebs, and Mueller shall be dismissed with prejudice. However, this dismissal shall not prevent Plaintiff from pursuing a co-payment claim in state court, should he wish to do so.

**Dismissal of Count 3 – Deliberate Indifference – Failure to Intervene**

Plaintiff seeks to hold Mueller, Waggoner, Prather, and Phoenix liable for deliberate indifference to his nasal and back conditions, because they did not intervene to override Santos' decisions regarding Plaintiff's treatment. Each of these Defendants allegedly reviewed one or more of Plaintiff's grievances filed against Santos, complaining that Santos was not adequately treating Plaintiff's conditions and refused to refer him to an outside specialist.

Mueller is the Warden, and Waggoner is an assistant warden at Centralia. Prather is the IDOC's Southern Regional Coordinator for Health Services, and Phoenix is a member of the IDOC's Administrative Review Board. (Doc. 1, pp. 2-3). None of these officials was personally involved in providing medical care to Plaintiff. Ordinarily, an administrative official who reviews an inmate's grievances over the alleged misconduct of another person is not "personally responsible" for the complained-of conduct, and does not incur liability in a civil rights case for denying the grievance. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Furthermore, a non-medical prison official "will generally be justified in believing that the prisoner is in capable hands," if the prisoner is under the care of medical professionals. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

Alternatively, a defendant "is personally responsible 'if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent.'" *Wilson v. Warren County, Ill.*, 830 F.3d 464, 469 (7th Cir. 2016) (quoting *Gentry v. Duckworth*, 65 F.3d

555, 561 (7th Cir. 1995)).  *See also Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (prisoner could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his serious medical condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences").

In Plaintiff's case, the Complaint and exhibits do not demonstrate that Plaintiff's grievances put any of these Defendants on notice that the medical care provided by Santos was inadequate to the degree of violating the Eighth Amendment.  Two of Plaintiff's attached grievances focused on his dissatisfaction with the repeated $5.00 co-payment charges and did not claim his treatment was deficient.  (Doc. 1-1, pp. 2-3, 7-8).  One grievance (on March 7, 2016) briefly summarized Plaintiff's symptoms, complained about Santos' denial of a specialist referral (when Dr. Garcia had recommended a referral), and complained again about the co-payments. (Doc. 1-1, pp. 9-10).  Prather reviewed Plaintiff's medical records before responding to his complaint/grievance, and concluded that he had been treated appropriately.  (Doc. 1-2, p. 4). Based on the information Plaintiff presents, it would not have been obvious to a reviewing official that Santos' decision to deny a specialist referral amounted to a constitutionally significant denial or delay of necessary treatment.

For these reasons, the deliberate indifference claim in **Count 3** against Mueller, Waggoner, Prather, and Phoenix shall be dismissed without prejudice.

## Count 6 – Retaliatory Cell Placement

Plaintiff articulates a retaliation claim arising from his interactions with C/O Bailey, whose disciplinary charge against Plaintiff was expunged, and who then allegedly violated the PREA by staring at Plaintiff's genitals and exposing Plaintiff's naked body to the view of others.

Plaintiff filed a PREA complaint against Bailey, and the next day, Plaintiff was moved to a cell in the "receiving unit." (Doc. 1, pp. 12-13).

Plaintiff has not included Bailey or the officer (Philips) who moved Plaintiff to the new cell as Defendants in this action. Instead, he claims that Assistant Warden Kink "allowed" this retaliatory cell move, because Plaintiff filed the PREA complaint. (Doc. 1, p. 21). During his time in "receiving," Plaintiff effectively lost privileges as compared to his former housing unit – prisoners in the receiving unit remained locked in their cells for approximately 1 hour per day longer than inmates in general population, and for an additional 1 hour on transfer days, and the yard had fewer weights. Plaintiff spoke with Kink and Mueller numerous times, presumably about this unwanted placement, but they kept him in the receiving unit until December 9, 2016. (Doc. 1, p. 13).

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). An action such as relocating an inmate to a different cell is not, in and of itself, a constitutional violation. However, if an otherwise permissible action is taken in retaliation for the exercise of a constitutionally protected right, then it may violate § 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner).

The issue in a retaliation claim is whether the plaintiff experienced an adverse action that

would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges*, 557 F.3d at 551. "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). Plaintiff's PREA complaint was activity protected by the First Amendment. Plaintiff clearly viewed his transfer to the receiving unit, and his continuing placement there, as an adverse action. Whether or not Kink and/or Mueller were motivated by a desire to retaliate against Plaintiff for filing the PREA complaint against Bailey is a question that cannot be resolved at this early stage of the case. **Count 6** therefore survives the § 1915A screening, and shall proceed against Kink and Mueller.

### Count 7 – Retaliatory Transfer to Robinson

Plaintiff filed his second PREA complaint on approximately December 27, 2016. This time, Plaintiff complained that Dr. Santos made an offensive and obscene gesture to him to demonstrate that he would use his fist to conduct a rectal exam on Plaintiff. (Doc. 1, p. 14). Plaintiff met with internal affairs officers on January 3, 2017, as part of the investigation of his complaint. At that time, Plaintiff also complained that Krebs had failed to pass along his PREA report on Santos to other officials.

On February 8, 2017, before Plaintiff was informed of the outcome of his complaint, he was transferred to Robinson. Plaintiff asserts he was transferred in retaliation for having filed the PREA complaint against Santos, as well as for his many grievances over medical issues. (Doc. 1, p. 14). Later in the Complaint, Plaintiff states that Santos was "part of [the] retaliatory transfer" (Doc. 1, p. 20); Mueller, Waggoner, and Kink "allow[ed]" the retaliatory transfer (Doc. 1, pp. 20-21); Mueller and Krebs "sign[ed] off on" the transfer (Doc. 1, pp. 20-21), and Wegman

(counselor) "fil[ed]" the retaliatory transfer (Doc. 1, p. 21).

As discussed under Count 6 above, Plaintiff's medical grievances and PREA complaints are protected activities under the First Amendment. If Plaintiff was transferred to Robinson in retaliation for bringing the PREA complaint and/or filing grievances against Santos, the transfer would violate his First Amendment rights. *See Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper"); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner).

Whether each of the individuals named in this count was personally involved in the alleged retaliatory transfer remains to be seen. At this stage, however, Plaintiff has articulated a claim for retaliation in connection with his complaints against Santos that survives review under 28 U.S.C.A. § 1915A. **Count 7** shall therefore proceed against Santos, Mueller, Waggoner, Kink, Krebs, and Wegman.

Because the retaliation claims against the Defendants named in Count 7 all arose from the same transaction/occurrence, joinder of these Defendants in the same action is proper under Federal Rule of Civil Procedure 20. Under Federal Rule of Civil Procedure 18, Plaintiff's additional claims against any of these Defendants may also proceed in the same action. *See Intercon Research Assn., Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1983) (quoting Wright, *et al.*, 7 Federal Practice & Procedure Civ.). Therefore, the surviving deliberate indifference claim in Count 1 against Santos shall proceed in this case along with the retaliation claim in Count 6 against Kink and Mueller, and Count 7. However, as noted above, Counts 4 and 5 against Singler and Rupert shall be severed into a new case, and Counts 8-10 shall be

severed into a second new case, pursuant to Federal Rules of Civil Procedure 20 and 21.

### Dismissal of Additional Defendants

Plaintiff includes two Defendants in his list of parties who are not mentioned elsewhere in his statement of facts or the "Legal Claims" section: John Doe (Head of Wexford Health Source, Inc.), and Rogerick Matticks (Medical Director, Wexford Health Source, Inc.). (Doc. 1, pp. 3, 24). Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the Complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the Complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

Because Plaintiff has not included any allegations of wrongdoing against either of these individuals, Defendants John Doe (Head of Wexford Health Source, Inc.), and Matticks will be dismissed from this action without prejudice.

Plaintiff shall note that if it was his intention to sue Wexford Health Source, Inc., as a corporate entity, he must name the company as a Defendant. In order to maintain a claim against Wexford, he must also set forth factual allegations to demonstrate that a particular individual Wexford employee violated his constitutional rights as a result of an official policy espoused by Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation).

## Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 5) is **GRANTED**. The "Motion to Proceed *in Forma Pauperis* for Allowing United States Marshal to Serve Complaints" (Doc. 8) is **GRANTED** insofar as the Court shall order service on the Defendants herein. While Plaintiff does not qualify to proceed *in forma pauperis* in this action, it would be difficult for him to serve the Defendants on his own as he is now incarcerated in a different prison from where the Defendants are employed. The Court shall order service on those Defendants who remain in the action. 28 U.S.C. § 1915(d). No service shall be made on the dismissed Defendants.

## Disposition

**COUNT 2** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Defendants **PRATHER, JOHN DOE (Head of Wexford Health Source, Inc.), MATTICKS,** and **PHOENIX** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 20(a)(2), Plaintiff's claims in **COUNTS 4 and 5,** and the claims in **COUNTS 8, 9, and 10** are severed into two new cases. The new cases will be:

**Severed Case 1:** Due process claims against **SINGLER and RUPERT (Count 4)**, and retaliation claim against **SINGLER (Count 5).**

**Severed Case 2:** Deliberate indifference to medical needs claims against **SHAH, RITZ, and MARTIN (Count 8)**, deliberate indifference claims against **MARTIN, ERICKSON, WALTON, WAMPLER, RAINS, NEESE, LEHR, PHOENIX,**

**McCARTY, and ANDERSON (Count 9)**, and retaliation claim against **SHAH (Count 10).**

In each new case, the Clerk is **DIRECTED** to file the following documents:

    (1)    This Memorandum and Order
    (2)    The Original Complaint (Doc. 1) and exhibits (Docs. 1-1 & 1-2)
    (3)    Plaintiff's motions to proceed *in forma pauperis* (Docs. 2 and 8)
    (4)    Plaintiff's motion for the recruitment of counsel (Doc. 3)
    (5)    Plaintiff's motion for service of process at government expense (Doc. 5)

Plaintiff is **ADVISED** that he **will be responsible for an additional $400.00 filing fee** in each new case, unless he is granted leave to proceed *in forma pauperis* ("IFP") in one or both cases, which would reduce the filing fee to $350.00. No service shall be ordered in either severed case until the Court completes the merits review pursuant to § 1915A. Additionally, if Plaintiff does not qualify to proceed IFP in either action, the case may not be permitted to proceed until the filing fee is paid in full.

**IT IS FURTHER ORDERED** that the ***only claims remaining in this action are COUNTS 1, 6, and 7 against Defendants SANTOS, MUELLER, WAGGONER, KREB/KREBS, KINK, and WEGMAN.*** This case shall now be captioned as: **TIBERIUS MAYS, Plaintiff, vs. SANTOS, MUELLER, WAGGONER, KREB/KREBS, KINK, and WEGMAN, Defendants.**

**IT IS FURTHER ORDERED** that Defendants **SHAH, SINGLER, WALTON, WAMPLER, ERICKSON, RAINS, NEESE, MARTIN, RITZ, LEHR, RUPERT, McCARTY, and ANDERSON** are **TERMINATED** from *this* action with prejudice.

As to **COUNTS 1, 6, and 7**, which remain in the instant case, the Clerk of Court shall prepare for Defendants **SANTOS, MUELLER, WAGGONER, KREB/KREBS, KINK,** and **WEGMAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms,

a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

       **IT IS SO ORDERED.**

       **DATED: March 21, 2018**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court
