UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIBERIUS MAYS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| | ) |
| | ) |
| VENERIO BENERRO SANTOS, | ) |
| ROBERT MUELLER, STEPHANIE | )   Case No. 3:18-cv-0181-GCS |
| WAGGONER, LISA KREBS, KEVIN | ) |
| KINK, and ROBBIE WEGMAN, | ) |
| | ) |
|    Defendants.[1] | ) |

MEMORANDUM and ORDER

SISON, Magistrate Judge:

INTRODUCTION AND BACKGROUND

Pending before the Court is a motion for summary judgment filed by Defendant Santos and a motion for summary judgment filed by Defendants Kink, Krebs, Mueller, Waggoner, and Wegman. (Doc. 65, 69 respectively). Plaintiff Tiberius Mays, by and through Court assigned counsel, filed oppositions to both motions. (Doc. 72, 74 respectively). Based on the reasons delineated below, the Court **GRANTS** the motions for summary judgment.

---

[1]    The Court notes that the pleadings have two different spellings for Defendant Krebs: "Kreb" and "Krebs." The record reflects her correct spelling is "Krebs," thus throughout this Memorandum and Order, the Court will use "Krebs." Further, the Court DIRECTS the Clerk of the Court to change her name on the docket to reflect this.

Mays, a former inmate within the Illinois Department of Corrections ("IDOC") housed in Centralia Correctional Center ("Centralia"), brought this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. (Doc. 1). On March 21, 2018, the Court performed a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, severed several of Mays's claims into other cases and allowed the following claims to proceed in this case:

> **Count 1 –** Eighth Amendment claim for deliberate indifference to serious medical needs against Santos for denying and delaying treatment and specialist referrals for Mays's nasal condition between August 2015 and February 2017 at Centralia.

> **Count 6 –** First Amendment retaliation claim against Kink, for moving Mays to the "receiving unit" at Centralia in October of 2016, and against Mueller for keeping Mays there, after Mays filed a PREA complaint against C/O Bailey.

> **Count 7 –** First Amendment retaliation claim against Santos, Mueller, Wegman, Waggoner, Krebs and Kink for transferring Mays to Robinson in December 2016 after he filed a PREA complaint and numerous medical care complaints against Santos.

(Doc. 9, p. 14, 19-22).

FACTS[2]

The following facts are taken from the record and presented in the light most favorable to Mays, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

Mays was incarcerated within the IDOC from 1989 to 2018. He was housed at

---

[2]      The facts are not disputed by the parties unless noted. The Court notes that Mays's responses state: "Plaintiff also accepts those set forth by . . . but will add to those facts throughout this response." (Doc. 72, p. 1; Doc. 74, p. 1).

Centralia from August 2015 until February 2017. During this time, Mays was under the care of the medical staff at Centralia, including Defendant Santos who was a doctor. In 2016, Defendant Robert Mueller was the Warden at Centralia. Defendant Stephanie Waggoner was the Assistant Warden of Programs at Centralia. Defendant Lisa Krebs was the Health Care Unit Administrator at Centralia. Defendant Kevin Kink was the Assistant Warden of Operations. Defendant Robbie Wegman was a counselor.

In April 2012, Mays became aware of his nasal polyps. On April 19, 2014, Mays had surgery to remove his nasal polyps. Sometime in October/November 2014, Mays's symptoms regarding his nasal polyps began to return.

Santos prescribed a saline and/or distilled water rinse to help Mays clear his sinuses. Mays had an eight-ounce bottle of water and would receive a gallon of distilled water every fourteen days to refill it. Mays would squirt the water into his sinuses to rinse them free of mucus. The distilled water was effective to clear Mays's nose and enable him to breathe easier.

Also at Centralia, Mays recalled being prescribed the following medications to assist with his breathing: Nasacort, a steroid nasal spray that was prescribed to reduce his nasal polyps; Prednisone, a steroid that was prescribed to decrease his nasal polyps; Alvesco, a steroid used to treat his asthma; Xopenex, a rescue inhaler for asthma attacks; "cold pills;" and Claritin. The Prednisone helped control his nasal polyps.

Mays testified that he saw Santos at least 15 times during the 18 months he was at Centralia. The medical records, however, show that Mays saw Santos at least 14 times

while at Centralia: August 23, 2015; September 3, 2015; September 24, 2015; November 3, 2015; November 16, 2015; November 23, 2015; January 7, 2016; February 5, 2016; February 15, 2016; March 7, 2016; April 1, 2016; May 23, 2016; December 27, 2016; and December 30, 2016.

Mays testified that when he had appointments with Santos, Santos would listen to his complaints and Santos would ask about his welfare. Mays also testified that during several of his appointments with Santos, Santos examined his sinuses. Santos prescribed medications to treat Mays's medical conditions, and when Mays had complaints involving his sinuses, Santos would prescribe medications to address those complaints. Mays was able to get refills of his medications during the time he was housed at Centralia. At times, Mays would sign up for sick call in order to receive a renewed prescription of Prednisone, and when he did so his supply was restored.

Mays maintained an exercise regimen that involved lifting weights and walking while he was at Centralia. Mays was able to breathe at least partially through his sinuses while at Centralia with the aid of medications. Mays does not contend that Santos refused to give him medical treatment in the form of medications and examinations for his nasal polyps. Instead, Mays wished to be sent to an offsite Ear/Nose/Throat ("ENT") specialist, not because he thought he needed surgery, but because he would have more peace of mind knowing that he had received a specialist's assessment.

While Mays was housed at Robinson Correctional Center ("Robinson") his symptoms regarding his nasal polyps worsened so that he was not able to breathe out of

his nose. He was also getting dizzy, would bleed, and have pain when he blew his nose. Mays's symptoms were worse during his time at Robinson than during his time at Centralia. That is why it was determined at Robinson that Mays needed surgery to remove his nasal polyps. In January 2018, Mays had a second surgery to remove his nasal polyps. However, he still has issues with his sinuses. Mays experienced pain for a time from the nasal polyps, but the pain subsided.

Mays is not aware of any medical opinion indicating that while at Centralia, his treatment for nasal polyps there resulted in any harmful effects on his health that persist to the present.

On September 30, 2016, C/O Bailey issued Mays a disciplinary ticket that was quickly expunged. On October 5, 2016, Mays wrote a complaint invoking the Prison Rape Elimination Act ("PREA") on C/O Bailey because C/O Bailey opened the door on Mays while he was in the process of using the bathroom. Mays testified that after he filed the PREA complaint against C/O Bailey and while the investigation was ongoing, a decision was made to move Mays away from that officer.

On October 6, 2016, Mays was moved to receiving. Mays admitted in his complaint and during his deposition that it was Major Phillips that moved him to receiving. He recalls Major Phillips saying the move was for his safety or something to that effect.

Thereafter, the PREA allegations against C/O Bailey were deemed unsubstantiated. While Mays was housed in receiving, he spoke mostly with Kink. Mays was moved from receiving to the South 2 area on December 10, 2016.

On December 27, 2016, Mays saw Santos for a physical examination. Mays testified that during this appointment, Santos asked him if he wanted a rectal examination and told him "I do it like this," while puffing himself up and holding up his fist to the sky. Mays further testified that Santos repeated the statement and gesture, and Mays left the examination room. Thereafter, Mays wrote a PREA complaint relating to his account of events.

On February 8, 2017, Mays was transferred from Centralia to Robinson. Mays testified that he does not believe that Santos participated in the alleged retaliatory transfer. Mays has no evidence that Santos participated in the transfer or that Santos intended to retaliate against him for filing the PREA complaint.

Mays sued Mueller because he was the Chief Administrative Officer of the prison. Mays also had a number of conversations with Mueller about his health issues and wrote him letters. Mueller responded to some of Mays's grievances and/or kites. Mays admitted that when Mueller found out he was in receiving, Mays was moved back to the same housing unit and wing. Mays admits that Mueller is not a medical doctor and does not make medical decisions.

Mays wrote grievances about Santos, and Mueller responded to such grievances. On December 18, 2016, for example, Mueller responded to a letter from Mays. Mueller referenced an investigation and indicated that a disciplinary ticket was properly issued and was not done in a retaliatory manner. Mueller also spoke with Mays about medical issues. Mays sued Mueller because he was transferred. Mays believes his transfer was in

retaliation for the PREA complaint.

Mays sued Waggoner for essentially the same reason Mueller was sued, *i.e.*, because Waggoner was involved in the transfer in that she signed off on it. Waggoner spoke with Mays in January 2017. Mays and Waggoner spoke about the PREA complaint against Santos. Waggoner told Mays that it was being checked out by Internal Affairs. Mays admitted that Waggoner wanted to hear his perspective on what happened. Mays does not know why Waggoner signed off on the transfer. Waggoner recommended Mays be transferred to another facility per her email of January 20, 2017. She recommended Mays be transferred to a lower security facility if he met the requirements. Soon thereafter, Mays was transferred to Robinson, which is a lower security facility.

Mays sued Krebs because she answered all the grievances. Krebs also knew about the alleged mistreatment of Mays's medical condition. Mays wrote her numerous complaints, request slips, and letters. Krebs, however, did nothing about his complaints and essentially rubber stamped everything the doctor told her. Krebs did not provide Mays with any medical treatment. Mays admitted that Krebs could not override the doctor's medical decisions. On December 5, 2016, Krebs responded to multiple requests slips received from Mays. Krebs specifically requested that Mays discuss issues and concerns with either the Medical Director and/or Dr. Garcia.

Mays sued Kink because he signed off on the transfer and felt he oversaw the placement. Mays admitted that Kink approved of the move for security reasons.

Mays sued Wegman because Mays believes Wegman put the transfer request in

for Mays to be transferred. Wegman had nothing to do with the transfer, but Wegman did review Mays's grievances regarding medical care and his request for medication.

SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). The Court's role at summary judgment is not to evaluate the weight of evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the

Court is to determine whether a genuine issue of fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

ANALYSIS

## I.      Claim against Santos for Deliberate Indifference to Serious Medical Need

Santos argues that Mays does not have evidence that he demonstrated deliberate indifference to an allegedly serious medical condition. Mays counters that he can establish and meet both prongs of his deliberate indifference to medical needs claim. Specifically, Mays contends that the medical records indicate that his nasal polyps came back before he was transferred to Centralia. The polyps were also described as chronic in August 2015 when he arrived at Centralia. Mays argues that this evidence establishes that Santos knew the nasal polyps existed, that Santos should have known that the nasal polyps would not be resolved with a conservative course of treatment, and that a second surgery was necessary. The Court agrees with Santos.

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate he suffered from an objectively serious medical condition. *Id.* at 591-592. Second, the plaintiff must establish the individual prison officials were deliberately indifferent to that condition. *Id.*

The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)(citations omitted). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994)(violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm")(internal quotation marks omitted)(emphasis added)).

To show prison officials acted with deliberate indifference, a plaintiff must put forth evidence that prison officials not only knew that the prisoner's medical condition posed a serious health risk, but that they also consciously disregarded that risk. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Id. Accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(stating that "[d]eliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)(stating that "negligence, even gross negligence does not violate the Constitution.").

Assessing the subjective prong is more difficult in cases alleging inadequate health care as opposed to a lack of care. Without more, a "mistake in professional judgment

cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit explained as follows:

> By definition a treatment decision that is based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)).

This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[] that [he] did." *Whiting*, 839 F.3d at 662 (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016) (alterations in the original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, but only where the treatment is known to be ineffective and chosen anyway. *See Berry*, 604 F.3d at 441. The Eighth Amendment does not require that prisoners receive "'unqualified access to health care.' Rather, they are entitled only to "'adequate medical care.'" *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (citations omitted).

Construing the evidence in the light most favorable to Mays, the Court finds that he has not established that Santos was deliberately indifferent to his medical needs regarding his nasal polyps, sinus congestion, pain and occasional bleeding from his nose. The record reveals that Santos saw Mays on at least 14 separate occasions over an 18-month period, and that during these visits Santos provided appropriate medical

treatment to Mays. For example, Santos routinely saw, examined, and prescribed medications for Mays's nasal condition including a saline and/or distilled water rinse to help clear Mays sinus.[3] Further, the record reveals that Mays was prescribed the following medications to assist with his breathing: Nasacort, Prednisone[4], Alvesco, Xopenex, cold pills and Claritin. Additionally, Mays testified when he had appointments with Santos, Santos would listen to his complaints. Santos would sometimes examine his sinuses, and Santos would prescribe medications to treat his medical conditions, including the nasal polyps. (Doc. 66-1, p. 134, 149). Obviously, the treatment Mays received was not the treatment he wanted or demanded (as Mays demanded a second opinion and a second surgery). However, mere disagreement or dissatisfaction as to the treatment received does not amount to deliberate indifference. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). There is no evidence that Santos's medical decisions and/or treatment plans were such a substantial departure from accepted professional judgment, or so plainly inappropriate, as to permit the inference he intentionally or recklessly disregarded Mays's serious medical needs. Thus, the Court grants summary judgment in favor of Santos on Count 1.

---

[3]     Mays testified that he received a gallon of distilled water every fourteen days. He also had an eight-ounce water bottle which he would fill with the distilled water. Mays would squeeze water into his sinuses to rinse them free of mucus. Mays testified that this was effective to clear his nose and enable him to breathe easier. (Doc. 66-1, p. 124-125).

[4]     Mays also testified that Prednisone helped control his nasal polyps and his asthma. (Doc. 66-1, p. 127-128).

## II.     First Amendment Retaliation claims

To succeed on a claim of First Amendment retaliation, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). An inmate has a constitutional right to file a grievance as part of his right of access to the courts under the First Amendment. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), abrogated on other grounds by, *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). Retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

In a First Amendment retaliation claim, the burden of proof is split between the parties. *See Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013)(citing *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274 (1977)). First, Plaintiff must show that defendant's conduct was sufficient to cause the injury, that is, that the protected First Amendment conduct was a motivating factor for taking the retaliatory action. *Id.* at 634-635.   The burden then shifts to the defendant to rebut by showing that the action would have occurred anyway, regardless of the improper motive. *Id.* at 635.

### A.     Count 6 against Kink and Mueller

As to this Count, Kink and Mueller argue that they are entitled to summary

judgment as there is no evidence that they retaliated against Mays for filing a PREA complaint against C/O Bailey in October 2016. Specifically, Kink and Mueller argue that neither of them placed Mays in the Receiving Unit. Instead, Mays admitted that Major Phillips told him that he was being moved for security reasons. Mays also admitted that once Mueller learned Mays was in Receiving, Mueller moved him out of Receiving. In response, Mays does not address the arguments regarding his claims against Kink and Mueller in Count 6.[5] Based on this lack of response, coupled with evidence contained in the record, the Court finds that Mays has not established that Kink and Mueller retaliated against him for filing the PREA complaint against C/O Bailey. Accordingly, summary judgment is proper in favor of Kink and Mueller on the claims against them in Count 6.

### B.    Count 7 against Santos, Mueller, Wegman, Waggoner, Krebs and Kink

#### 1.    Santos

As to Mays's claims against Santos, the Court finds that Mays cannot establish that Santos had a retaliatory motive against Mays because Mays engaged in protected First Amendment conduct. First, Mays admitted during his deposition that there is no evidence that Santos took any action against him that was motivated by an intent to retaliate against him for actions protected by the First Amendment. Specifically, Mays testified that he does not believe that Santos participated in his allegedly retaliatory

---

[5]    A failure to respond to an argument results in waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). *See also Laborers Int'l Union of N. America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999)(stating that arguments not presented to the district court in response to summary judgment motions are waived).

transfer from Centralia to Robinson. He further testified that he has no evidence that Santos participated in the transfer or that Santos had the intent to retaliate against him for filing the PREA complaint.[6] Thus, Santos is entitled to summary judgment on the

---

[6]      The following colloquy occurred during Mays's deposition:

Q. All right. And then when Mr. Carwile was asking questions, you said and I think you've alleged this that you think Dr. Santos was involved in the decision to have you transferred to Robinson; is that correct?

A. I'm not for sure about that, I honestly don't think doctors have anything to do with that to be honest with you, and I don't think I put in my complaint that he had anything to do with it.

Q. Okay.

A. So.

Q. Okay. So just to be clear, you don't think Dr. Santos retaliated against you for filing the PREA complaint by having you transferred to Robinson.

A. See, you know, the thing about that is, I didn't put it in my complaint like that, because I have no proof that he does, I have no evidence, but at the same time, he's the doctor, he's the medical director that works at an institution, an so I'm sure he talks to the wardens, he talks to people, and so but I don't have any proof of that.

Q. Okay.

A. So, it's just speculation, but I know for a fact that they talked to each other, you know, they work in the same prison, so quite – if you work in the same office, you're going to talk to your staff, but I don't have any proof that he had anything to do with it.

…

Q. Okay. Do you have any evidence that – so I think that you said this earlier, but let me just ask the question, do you have any evidence that Dr. Santos had an intent to retaliate against you for filing the PREA complaint that resulted in anything bad happening to you?

A. I don't think that's my issue though.

Q. Okay.

A. So I'd probably have to say no.

(Doc. 66-1, p. 172-175).

retaliation claim against him in Count 7.

 **2.    Mueller, Wegman, Waggoner, Krebs and Kink**

As to the claims against Mueller, Wegman, Waggoner, Krebs and Kinks in Count 7, Defendants again argue that there is no evidence that these Defendants retaliated against him for filing the PREA complaint against Santos. Defendants maintain that Mays's transfer to another facility was necessary so that Mays's medical needs could be addressed after he made a PREA complaint against Santos, who was the primary physician at Centralia. Defendants further maintain that because Mays has a protected right to file PREA complaints, Mays was moved away from Santos as that was who he complained about in his PREA complaint. Mays counters that there are significant questions of fact regarding whether Defendants' act of transferring him from Centralia to Robinson was in retaliation for filing the PREA complaint against Santos. Mays further counters that the PREA complaint against Santos was substantiated and acknowledged in a January 20, 2017 email to Bart Toennies. Mays contends that Defendants did not discipline Santos, but instead punished him by transferring him which is retaliatory on its face. Based on the following, the Court agrees with Defendants.

The record reveals that Defendants did not act contrary to the purpose of PREA when Mays was transferred to Robison. After Mays filed the PREA complaint against Santos, Waggoner spoke to Mays about his PREA complaint. Waggoner, in an email to the transfer coordinator, recommended that Mays be transferred to a lower security facility if Mays met the requirements. Waggoner also indicated that Mays recently filed

a PREA complaint against Santos. Because Santos was the primary physician at Centralia, it was thus necessary to transfer Mays to a new facility so that his healthcare needs could be addressed.

PREA's National Standards require the "inmate victim" to be separated from an accused "abuser" after a complaint is made. Specifically, 28 C.F.R. § 115.67(b) provides:

> (b) The agency shall employ multiple measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with the victims, and emotional support services for inmates or staff who fear retaliation for reporting sexual abuse or sexual harassment or for cooperating with investigations.

Mays has not established that he was retaliated against by any of the Defendants, and the record reveals that Defendants did not act contrary to PREA. Instead, Defendants followed the PREA guidelines. Thus, Defendants Mueller, Wegman, Waggoner, Krebs and Kinks are entitled to summary judgment on the claims against them in Count 7.

## CONCLUSION

Accordingly, the Court **GRANTS** the motion for summary judgment filed by Defendant Santos (Doc. 66), and the Court **GRANTS** the motion for summary judgment filed by Defendants Mueller, Wegman, Waggoner, Krebs, and Kink (Doc. 70).   The Court finds in favor of Venerio Santos and against Tiberius Mays on the claim in Count 1; in favor of Kevin Kink and Robert Mueller and against Tiberius Mays on the claims in Count 6, and in favor of Venerio Santos, Robert Mueller, Robbie Wegman, Lisa Krebs and Kevin Kink and against Tiberius Mays on the claims in Count 7. The Court **DIRECTS** the Clerk

of the Court to enter judgment reflecting the same and close the case. Mays shall take nothing from this matter.

   **IT IS SO ORDERED.**

   **Dated: June 22, 2020.**

Digitally signed by
Magistrate Judge
Gilbert C. Sison
Date: 2020.06.22
15:34:49 -05'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**